**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

THOMAS GRAY SKIPPER, et al.,

                    Plaintiffs,

     v.

UNITED STATES FISH AND WILDLIFE
SERVICE, et al.,

                    Federal Defendants,

CENTER FOR BIOLOGICAL DIVERSITY,

                    Defendant-Intervenor.

Case No. 1:21-CV-00094-JB-B

**<u>PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS'</u>**
**<u>REMEDY BRIEF</u>**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... iii

GLOSSARY .................................................................................................................. vii

INTRODUCTION ........................................................................................................... 1

LEGAL BACKGROUND ............................................................................................... 2

I.      Summary Judgment: The Mode of Disposition for ESA, APA, and RFA Claims............. 2

II.     Vacatur: The Presumptive Remedy for Agency Violation of the APA and ESA .............. 3

III.    The Extraordinary Remedy of Remand Without Vacatur ................................... 5

IV.     Remedies for Violation of the RFA ..................................................................... 7

ARGUMENT ................................................................................................................... 8

I.      Summary Judgment is the Appropriate Manner in Which to Dispose of the Landowners' Claims ................................................................................................ 8

II.     Remand Without Vacatur is Unavailable for the Landowners' Claims That the Service Violated the ESA ....................................................................................... 9

        A.      The Landowners' First and Second Claims for Relief pertain to the ultimate legality of the Service's determination that Units 7 and 8 meet the statutory standards for designating critical habitat ............................................................. 10

        B.      The Landowners' Third and Fourth Claims for Relief pertain to the Service's failure to comply with the ESA's "categorical requirement" that it consider economic impacts ................................................................................................. 12

III.    Even Were Remand Without Vacatur Available for the Landowners' ESA Claims, the Service Has Failed to Meet Its Burden to Demonstrate That Remand Without Vacatur Is Appropriate Under *Allied-Signal* ................................... 13

        A.      The Landowners contend that the Final Rule contains serious deficiencies ........ 13

        B.      The equities favor vacatur of Units 7 and 8 ...................................................... 16

                1.      The designation of Units 7 and 8 is harmful .......................................... 17

2.      Vacatur of Units 7 and 8 would not harm the pinesnake's conservation.. 19

IV.     Vacatur of Units 7 and 8 is the Proper Remedy for the Plaintiffs' RFA Claim ............... 21

V.      This Court Must Vacate Units 7 and 8 In Their Entirety.................................................. 22

VI.     The Service Cannot Use Its Brief on Remedy to Further Argue the Merits.................... 24

CONCLUSION............................................................................................................................. 26

CERTIFICATE OF SERVICE ..................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795 (D.C. Cir. 1983) ................3

*Alabama v. Ctrs. for Medicare & Medicaid Servs.*, 674 F.3d 1241 (11th Cir. 2012) ..............4, 23

*Allentown Mack Sales & Serv., Inc. v. Nat'l Labor Relations Bd.*, 522 U.S. 359 (1998) ...............3

*Alliance for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105 (9th Cir. 2018) .......................6

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993)............. *passim*

*Am. Coll. of Emergency Physicians v. Price*, 264 F. Supp. 3d 89 (D.D.C. 2017)..........................9

*Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510 (D.C. Cir. 2020).......................................7

*Anderson v. Yungkau*, 329 U.S. 482 (1947)...................................................................................3

*Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160 (9th Cir. 2010)................................. 15-16

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
   354 F. Supp. 3d 1253 (N.D. Ala. 2018)............................................................................ 2, 8-9

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
   781 F.3d 1271 (11th Cir. 2015) ...................................................................................... *passim*

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
   No. 2:13-CV-02136-WMA, 2015 WL 6152898 (N.D. Ala. Oct. 20, 2015),
   *aff'd*, 833 F.3d 1274 (11th Cir. 2016) ................................................................................ 5-6

*Bldg. Indus. Legal Def. Found. v. Norton*, 231 F. Supp. 2d 100 (D.D.C. 2002) ...............12, 14, 20

*Bloch v. Powell*, 227 F. Supp. 2d 25 (D.D.C. 2002).......................................................................2

*Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*,
   344 F.Supp.2d 108 (D.D.C. 2004) .................................................................................. 14-15

*Checkosky v. SEC*, 23 F.3d 452 (D.C. Cir. 1994).........................................................................7

*Davis Cnty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454 (D.C. Cir. 1997)............................. 22-23

*Defs. of Wildlife v. EPA*, 420 F.3d 946 (9th Cir. 2005), *rev'd on other grounds*,
   *sub nom. Nat'l Ass'n of Home Builders v. Defs. Of Wildlife*, 551 U.S. 644 (2007) ..................4

*Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469 (1992) ...................................................3

*Fed. Commc'ns Comm'n v. Midwest Video Corp.*, 440 U.S. 689 (1979).......................................3

*Health Freedom Def. Fund, Inc. v. Biden*,
   No. 8:21-CV-1693-KKM-AEP, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022),
   *appeal filed* April 21, 2022 (11th Cir. No. 22-11287) ..................................................... *passim*

*High Country Conservation Advocates v. U.S. Forest Serv.*,
   951 F.3d 1217 (10th Cir. 2020) ............................................................................... 22-23

*Legal Env't Assistance Found., Inc. v. EPA*, 118 F.3d 1467 (11th Cir. 1997)..................... *passim*

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).............................3

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) .......................................................7

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)..................................................4, 23

*Murphy v. Smith*, 138 S. Ct. 784 (2018) .......................................................................................3

*N.C. Fisheries Ass'n, Inc. v. Daley*, 27 F. Supp. 2d 650 (E.D. Va. 1998) .......................................7

*N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277 (10th Cir. 2001)......4, 14

*N.M. Farm & Livestock Bureau v. U.S. Dep't of Interior*, 952 F.3d 1216 (10th Cir. 2020)..........11

*N.M. Farm & Livestock Bureau v. U.S. Dep't of Interior*,
   No. CV 15-428 KG/CG, 2021 WL 275535 (D.N.M. Jan. 27, 2021)............................... *passim*

*Nat. Res. Def. Council v. EPA*, 489 F.3d 1250 (D.C. Cir. 2007)..................................................16

*Nat'l Ass'n of Home Builders v. Norton*,
   No. 00-CV-903, 2001 WL 1876349 (D. Ariz. Sept. 21, 2001) .........................................12, 14

*Nat'l Ski Areas Ass'n, Inc. v. U.S. Forest Serv.*, 910 F. Supp. 2d 1269 (D. Colo. 2012)...........8, 21

*Neb. Habitat Conservation Coal. v. U.S. Fish & Wildlife Serv.*,
   No. 4:03-cv-03059 (D. Neb. October 13, 2005).....................................................................14

*North Carolina v. EPA*, 531 F.3d 896 (D.C. Cir. 2008) .........................................................17, 22

*Nw. Mining Ass'n v. Babbitt*, 5 F. Supp. 2d 9 (D.D.C. 1998).......................................................21

*Otay Mesa Prop., L.P. v. U.S. Dep't of Interior*, 646 F.3d 914 (D.C. Cir. 2011)............................4

*Otay Mesa Prop., L.P. v. United States Dep't of the Interior*,
   344 F. Supp. 3d 355 (D.D.C. 2018) .................................................................................11, 14

*Pollinator Stewardship Council v. EPA*, 806 F.3d 520 (9th Cir. 2015) ........................................16

*Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*,
87 F.3d 1242 (11th Cir. 1996) ...................................................................................25

*Tenn. Valley Auth. v. Hill*, 437 U.S 153 (1978) ...........................................................3

*U.S. Telecom Ass'n v. Fed. Commc'ns Comm'n*, 400 F.3d 29 (D.C. Cir. 2005)..........................21

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361 (2018)..................................2, 12

*Wise v. Heddel*,   No. 5:09-CV-127 CAR, 2011 WL 1379867 (M.D. Ga. Apr. 12,
2011) .................................................................................................................25

## **Statutes**

5 U.S.C. § 611(a)(1).........................................................................................................2

5 U.S.C. § 611(a)(4).........................................................................................................7

5 U.S.C. § 706(2)..........................................................................................................3, 23

5 U.S.C. § 706(2)(A)......................................................................................................2, 9

16 U.S.C. § 1532(5)(A)(i)...............................................................................................10

16 U.S.C. § 1532(5)(A)(ii).............................................................................................15

16 U.S.C. § 1533(b)(2) ...................................................................................................12

16 U.S.C. § 1536(a)(2)....................................................................................................18

## **Miscellaneous**

50 C.F.R. § 17.42 ............................................................................................................20

C-Span Recording: Confirmation Hearing for Supreme Court Nominee Ketanji
Brown Jackson, Day 3 Part 1 at 1:43:00-1:45:40 (C-Span March 23, 2022)
*available at* https://www.c-span.org/video/?518343-101/jackson-
confirmation-hearing-day-3-part-1 .....................................................................4

Prestes, Brian S., *Remanding Without Vacating Agency Action*, 32 Seton Hall L.
Rev. 108 (2001) ................................................................................................7

Sohoni, Mila, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121 (2020) ..........................3

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* |
| AR | The stipulated Administrative Record, ECF No. 44 |
| Designation | The United States Fish and Wildlife Service's February 26, 2020, final rule designating critical habitat for the black pinesnake, 85 Fed. Reg. 11,238 |
| ESA | Endangered Species Act, 16 U.S.C. § 1531 *et seq.* |
| Final Rule | The United States Fish and Wildlife Service's February 26, 2020, final rule designating critical habitat for the black pinesnake, 85 Fed. Reg. 11,238 |
| FLA | Forest Landowners Association |
| Goodloe Decl. | August 17, 2021, Declaration of John R. Goodloe III, ECF No. 50 |
| Jones Decl. | August 25, 2021, Declaration of Scott Jones, ECF No. 49 |
| Landowners | Plaintiffs Thomas Gray Skipper, HOS Timberlands, LLC, Phalyn, LLC, and Forest Landowners Association |
| Phillips Decl. | Declaration of Dr. Catherine Phillips, ECF No. 81-1 |
| Plaintiffs' Opening Brief (Pl. Op. Br.) | Plaintiffs' Motion for Summary Judgment and Brief in Support, ECF No. 47. Citations refer to original pagination. |
| Plaintiffs' Reply (Pl. Reply) | Plaintiffs' Combined Reply in Support of Motion for Summary Judgment and Brief in Opposition to Federal Defendants' and Defendant Intervenor's Cross-Motions for Summary Judgment, ECF No. 63. Citations refer to original pagination. |
| RFA | Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.* |
| Service | Federal Defendants United States Fish and Wildlife Service, United States Department of the Interior, Debra Haaland, and Martha Williams |
| Service's Opening Brief (Serv. Op. Br.) | Federal Defendants' Memorandum in Support of Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment, ECF Nos. 57-1, 58. Citations refer to original pagination. |

| | |
|---|---|
| Service's Remedy Brief (Serv. Remedy Br.) | Federal Defendants' Remedy Brief, ECF No. 81. Citations refer to original pagination. |
| Service's Reply Serv. Reply) | Federal Defendants' Reply in Support of Cross-Motion for Summary Judgment, ECF No. 71. Citations refer to original pagination. |
| Skippers or Skipper family entities | HOS Timberlands, LLC, the Helen O. Skipper Trust of 1967, and the Skipper Family Trusts of 1989 |
| Skipper Decl. | August 25, 2021, Declaration of Thomas Gray Skipper, ECF No. 48 |
| Third Yates Decl. | Third Declaration of Charles T. Yates, submitted with this brief. |

**INTRODUCTION**

The Plaintiff Landowners respectfully submit the following response to the Federal Defendants' Remedy Brief, ECF No. 81.

Should this Court find for the Landowners on the merits it should grant summary judgment in their favor, declare that the Service acted unlawfully in designating Units 7 and 8 as critical habitat for the black pinesnake, and enter the presumptive APA remedy by vacating Units 7 and 8 in their entirety. *See* ECF No. 8 at 32–34; ECF No. 47-1. Vacatur—which is explicitly required by the text of the APA—is the presumptive remedy for unlawful agency action. *See Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015) ("vacatur . . . is the ordinary APA remedy" (quotations omitted)). Departure from this presumptive remedy is inappropriate under the circumstances of this case, for two reasons.

First, the Landowners contend that the Service erred by violating the legal requirements of the ESA when it designated Units 7 and 8 as critical habitat. *See infra* 9–12. The Eleventh Circuit has declined to decide whether the extraordinary remedy of remand without vacatur is permitted "where the agency has erred to such an extent as to indicate that its ultimate decision was unlawful." *See Black Warrior Riverkeeper*, 781 F.3d at 1290. This Court should not entertain a request for remand without vacatur under circumstances the Eleventh Circuit has not endorsed. Second, even were this Court to entertain the Service's request, the equities weigh heavily against departure from the default remedy. The Service has not met its burden to demonstrate otherwise.

This brief will begin with a background discussion on remedies for unlawful agency action under the APA, ESA, and RFA. *See infra* 2–7. Next, it will present argument on the Service's request for the extraordinary remedy of remand without vacatur. *See infra* 8–23. Finally, it will

1

address the Service's attempt to use its supplemental remedy brief to present additional argument and extra-record evidence, in support its position on the merits. *See infra* 23–25.

## LEGAL BACKGROUND

This section will offer a background discussion on the appropriate remedy for unlawful agency action. First, it will discuss the appropriate manner for disposition of claims brought pursuant to the APA, ESA, and RFA—entry of summary judgment. Second, it will discuss the presumptive remedy for agency action found to be noncompliant with the requirements of the APA and ESA—vacatur. Third, it will discuss the extraordinary remedy of "remand without vacatur." Finally, it will discuss the related—but distinct—question of remedy under the RFA.

## I.    Summary Judgment: The Mode of Disposition for ESA, APA, and RFA Claims

Agency decisions made pursuant to the ESA and RFA are reviewed according to the standards set forth in the APA. *See Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018); 5 U.S.C. § 611(a)(1). Under the APA standard of review, a reviewing court "shall hold unlawful and set aside" agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the [APA's] standard of review." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 354 F. Supp. 3d 1253, 1267 (N.D. Ala. 2018) (citing *Bloch v. Powell*, 227 F. Supp. 2d 25, 31 (D.D.C. 2002)). *See also Health Freedom Def. Fund, Inc. v. Biden*, No. 8:21-CV-1693-KKM-AEP, 2022 WL 1134138, at *3 (M.D. Fla. Apr. 18, 2022) (same), *appeal filed* April 21, 2022 (11th Cir. No. 22-11287). As such, where agency action is found infirm under the APA's standard of review, the proper course is to enter

summary judgment in the plaintiff's favor. *See Health Freedom Def. Fund*, 2022 WL 1134138, at \*22.

## II.     Vacatur: The Presumptive Remedy for Agency Violation of the APA and ESA

The APA commands that a "reviewing court *shall* . . . hold unlawful and *set aside*" unlawful agency action. 5 U.S.C. § 706(2) (emphasis added). The Court's remedy analysis must begin with the text of the APA. *See Legal Env't Assistance Found., Inc. v. EPA*, 118 F.3d 1467, 1474 (11th Cir. 1997) ("In a statutory construction case, the beginning point must be the language of the statute . . ." (quoting *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475 (1992))). "Shall" is a command. *Murphy v. Smith*, 138 S. Ct. 784, 787 (2018) (holding that in the context of statutory interpretation, "the word 'shall' usually creates a mandate, not a liberty"). To "set aside" means to vacate. *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) ("To 'vacate,' . . . means 'to annul; to cancel . . . ; to set aside.'"). Accordingly, the Supreme Court has used the term "set aside" many times to reference invalidation or vacatur of agency regulation. *See*, *e.g.*, *Fed. Commc'ns Comm'n v. Midwest Video Corp.*, 440 U.S. 689, 708 n.18 (1979); *Allentown Mack Sales & Serv., Inc. v. Nat'l Labor Relations Bd.*, 522 U.S. 359, 374 (1998). *See also* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1138 (2020) (collecting cases). With this mandatory language, Congress sought to override any equitable discretion to fashion a remedy for an APA violation. *Cf. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("the mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion." (citing *Anderson v. Yungkau,* 329 U.S. 482, 485 (1947))). *See also Tenn. Valley Auth. v. Hill*, 437 U.S 153, 194 (1978) (noting that principles of equity "take a court only so far" because Congress can override those principles via statute).

Consistent with the unambiguous language of the APA, the Eleventh Circuit has held that vacatur is the presumptive remedy for any APA violation. *See Black Warrior Riverkeeper*, 781 F.3d at 1290 ("vacatur . . . is the ordinary APA remedy" (quotations omitted)). *See also Health Freedom Def. Fund*, 2022 WL 1134138, at *20 (referring to vacatur as the "ordinary" and "normal" remedy (collecting cases)). The Eleventh Circuit treats vacatur as a distinct form of equitable relief and has made clear that it is not an injunction. *See Alabama v. Ctrs. for Medicare & Medicaid Servs.*, 674 F.3d 1241, 1244–45 (11th Cir. 2012) (distinguishing APA vacatur from injunctive relief). *See also Health Freedom Def. Fund*, 2022 WL 1134138, at *21 (collecting cases for the proposition that vacatur is not an injunction). This is consistent with the Supreme Court's understanding. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) (noting that vacatur is a "less drastic remedy" than the "extraordinary relief of an injunction . . .").[1]

Similarly consistent with the unambiguous language of the APA, when an agency violates the ESA, courts will "typically . . . vacate the agency's action and remand to the agency to act in compliance with its statutory obligations." *Defs. of Wildlife v. EPA*, 420 F.3d 946, 978 (9th Cir. 2005), *rev'd on other grounds*, *sub nom. Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007). *See also*, *e.g.*, *Otay Mesa Prop., L.P. v. U.S. Dep't of Interior*, 646 F.3d 914, 918 (D.C. Cir. 2011) (*Otay Mesa I*) (vacating critical habitat designation after holding that a single sighting was insufficient to support "occupied" determination); *N.M. Cattle Growers Ass'n v. U.S.*

---

[1] *Cf.* C-Span Recording: Confirmation Hearing for Supreme Court Nominee Ketanji Brown Jackson, Day 3 Part 1 at 1:43:00–1:45:40 (C-Span March 23, 2022) *available at* https://www.c-span.org/video/?518343-101/jackson-confirmation-hearing-day-3-part-1 (explaining in response to a question about the constitutionality of nationwide injunctions that the APA's required remedy of vacatur is not an injunction).

*Fish & Wildlife Serv.*, 248 F.3d 1277, 1285 (10th Cir. 2001) (vacating critical habitat designation after determining that the Service had erred by relying upon the "baseline" approach).

## III.    The Extraordinary Remedy of Remand Without Vacatur

Notwithstanding the language of the APA, the Eleventh Circuit has held that under very limited circumstances, a reviewing court may exercise its equitable discretion to deviate from the APA's presumptive remedy and remand agency action "without vacatur." *See Black Warrior Riverkeeper*, 781 F.3d at 1289–90. In doing so, it referenced the District of Columbia Circuit's *Allied-Signal* test. *See id.* at 1290 (citing *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Under that test, a reviewing court will consider the "seriousness" of the deficiencies in the rulemaking and "the disruptive consequences of an interim change that may itself be changed." *See Black Warrior Riverkeeper*, 781 F.3d at 1290 (citing *Allied-Signal*, 988 F.2d at 150–51).

Under *Black Warrior Riverkeeper*, this Court should consider four factors on whether to allow the extraordinary remedy of remand without vacatur.

***First***, in *Black Warrior Riverkeeper* the court did not have a complete administrative record to review. There, the agency admitted "literally on the eve of oral argument" that it had made a data error. *Id.* at 1275, 1288.[2] As a result, the Eleventh Circuit was unable to evaluate whether the agency's action was arbitrary and capricious on the "incomplete record" before it. *See id.* at 1288. Due to this inability to determine the merits, the Eleventh Circuit declined to vacate. *Id.* at 1288–

---

[2] This single error in an agency calculation was described as potentially "inconsequential." *See Black Warrior Riverkeeper*, 781 F.3d at 1290. In subsequent proceedings it was described as a "math error." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, No. 2:13-CV-02136-WMA, 2015 WL 6152898, at *2 (N.D. Ala. Oct. 20, 2015), *aff'd*, 833 F.3d 1274 (11th Cir. 2016).

1291. Instead, it instructed the district court to remand for the agency to complete the record by correcting its "math error." *See Black Warrior Riverkeeper*, 2015 WL 6152898, at *2.

**Second**, in *Black Warrior Riverkeeper*, the Eleventh Circuit was explicit in limiting its endorsement of remand without vacatur to the unique circumstances before it—that is a scenario where an incomplete administrative record left it unable to determine on the merits whether a rule was arbitrary and capricious. *Black Warrior Riverkeeper*, 781 F.3d at 1290. It stated in pertinent part that "[w]e need not, *and do not*, decide whether remand without vacatur is permissible when the agency has erred to such an extent as to indicate that its ultimate decision was unlawful." *Id.* (emphasis added). As such, the Eleventh Circuit explicitly limited its holding to the distinct question of the appropriate remedy where an agency has compiled an "incomplete record." *Id.* It did not, however, address whether deviation from the presumptive remedy is appropriate where an agency has failed to follow the requirements of a statute like the ESA, and therefore committed a *legal* error. *Id. Black Warrior Riverkeeper* remains the only Eleventh Circuit majority opinion to address the propriety of deviating from the APA's presumptive remedy.

**Third**, even in circuits where requests for remand without vacatur are entertained more liberally, courts maintain that "[b]ecause the APA creates a 'presumption of vacatur' . . . the party seeking remand without vacatur carries the burden of overcoming that presumption." *N.M. Farm & Livestock Bureau v. U.S. Dep't of Interior*, No. CV 15-428 KG/CG, 2021 WL 275535, at *5 (D.N.M. Jan. 27, 2021). *See also Alliance for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121–22 (9th Cir. 2018) (noting that the party seeking vacatur had failed to overcome "the presumption of *vacatur*." (emphasis in original)).

**Fourth**, the District of Columbia Circuit—where the practice originates—has cautioned that remand without vacatur is an "exceptional remedy" that should only be permitted "in limited

circumstances." *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020). Indeed, the practice of remanding without vacatur has not been without controversy in the District of Columbia Circuit. *See Checkosky v. SEC*, 23 F.3d 452, 490 (D.C. Cir. 1994) (Randolph, J., concurring) ("I do not agree that this court has authority to remand this case without vacating the Commission's order."); *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 758 (D.C. Cir. 2002) (Sentelle, J., dissenting) ("[E]ven if we are empowered to depart from the literal command of the language [of the APA]—a proposition which in the absence of such precedent I would find surprising—I think it often, if not ordinarily, unwise.").[3]

As such, this Court should consider the extraordinary nature of remand without vacatur, the limited circumstances under which it is available in the Eleventh Circuit, and the Service's heavy burden to demonstrate its propriety.

## IV.   Remedies for Violation of the RFA

In granting relief under the RFA, a court "shall order" the agency to "take corrective action consistent with" the RFA and with the judicial review provisions of the APA. *See* 5 U.S.C. § 611(a)(4). The relief authorized by the RFA includes, but is not limited to (A) remanding the rule to the agency and (B) "deferring enforcement of the rule against small entities, unless the court finds that continued enforcement of the rule is in the public interest." *Id*. As such, unlike the APA, the RFA does not mandate vacatur. However, numerous courts have found vacatur appropriate where an agency has violated the RFA's requirements. *See N.C. Fisheries Ass'n, Inc. v. Daley*, 27 F. Supp. 2d 650, 666 (E.D. Va. 1998) (determining that the agency's failure to "conduct an

---

[3] The incompatibility of "remand without vacatur" with the command of the APA is also reflected in the academic literature. *See* Brian S. Prestes, *Remanding Without Vacating Agency Action*, 32 Seton Hall L. Rev. 108, 145–46 (2001) ("Defenders of remanding without vacating . . . side-step the separation of powers by favoring remedies unanchored in the statutory text of the APA.").

Economic Analysis as mandated under the RFA" was arbitrary and capricious, and therefore warranted vacatur); *Nat'l Ski Areas Ass'n, Inc. v. U.S. Forest Serv.*, 910 F. Supp. 2d 1269, 1287 (D. Colo. 2012) (holding that "[t]he fact that substantial evidence shows that Defendants also violated the RFA . . . only serves to reinforce the result against Defendants on vacatur.").

## ARGUMENT

Should this Court find for the Landowners on the merits it should grant summary judgment in their favor and enter the presumptive APA remedy by vacating Units 7 and 8 in their entirety. The Service has failed to meet its substantial burden of demonstrating that the extraordinary remedy of remand without vacatur is appropriate.

This section contains six parts. First, it will address the Service's request that even were this Court to find for the Landowners on the merits, it not enter summary judgment. *See infra* 8–9. Second, it will demonstrate that the extraordinary remedy of remand without vacatur is unavailable in the context of the Landowners' claims that the Service violated the requirements of the ESA. *See infra* 9–12. Third, assuming that remand without vacatur were available, it will address the Service's failure to meet its burden to justify departure from the default remedy. *See infra* 13–20. Fourth, it will demonstrate that vacatur is warranted for the Landowners' RFA claim. *See infra* 20–21. Fifth, it will demonstrate that Units 7 and 8 must be vacated in their entirety. *See infra* 21–23. Sixth, it will address the Service's attempt to use its remedy brief to present additional argument and extra-record evidence in support of its position on the merits. *See infra* 23–25.

## I.   Summary Judgment is the Appropriate Manner in Which to Dispose of the Landowners' Claims

In cases brought pursuant to the APA standard of review, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the [APA's] standard of review." *Black*

*Warrior Riverkeeper*, 354 F. Supp. 3d at 1267. *Cf.* ECF No. 29 at 4 ("The parties anticipate that all claims in this case will be resolved on cross-motions for summary judgment . . . ."). As such it is beyond dispute that if this Court agrees with the Landowners that the Final Rule violates the APA, ESA, and RFA, it must enter summary judgment in their favor.

However, the Service now suggests that if this Court finds in the Landowners' favor on the merits, it should do so without entering summary judgment. *See* Serv. Remedy Br. 8, 21. This unusual request conflicts with the pertinent legal authority. *See Black Warrior Riverkeeper*, 354 F. Supp. 3d at 1267; *Health Freedom Def. Fund*, 2022 WL 1134138, at *3. Even the single case cited by the Service in support of its request undercuts its position. *See* Serv. Remand Br. 8 (citing *Am. Coll. of Emergency Physicians v. Price*, 264 F. Supp. 3d 89, 96 (D.D.C. 2017)). In that case the United States District Court for the District of Columbia reiterated the axiomatic proposition that "[s]ummary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review," and then granted partial summary judgment after finding in the plaintiff's favor on several procedural claims. *See Am. Coll. of Emergency Physicians*, 264 F. Supp. at 93, 96.

## II.     Remand Without Vacatur is Unavailable for the Landowners' Claims That the Service Violated the ESA

If this Court were to rule in the Landowners' favor on their First, Second, Third, or Fourth Claims for Relief, it would be agreeing that the Final Rule was "not in accordance with law," namely, the ESA. *See* 5 U.S.C. § 706(2)(A). *See generally* ECF No. 8. In other words, it would be agreeing that by failing to adhere to the ESA's requirements, the Service committed a *legal* error. The Eleventh Circuit has held that under limited circumstances—namely where a minor defect in the agency's rulemaking record leaves the reviewing court unable to evaluate the merits—a reviewing court may depart from the text of the APA and enter the extraordinary remedy of remand

without vacatur. *See Black Warrior Riverkeeper*, 781 F.3d at 1290. But the Eleventh Circuit explicitly declined to extend this exception to circumstances "where an agency has erred to such an extent as to indicate that its ultimate decision was unlawful." *Id.*

Recognizing the import of *Black Warrior Riverkeeper*, the Service goes to great lengths to argue that the Landowners' claims pertain merely to "fail[ures] to adequately explain some aspect[s] of the Designation." *Id.* at 8. By characterizing this dispute as a question of inadequate explanation or completeness of the record, the Service misstates the Landowners' First, Second, Third, and Fourth Claims for Relief. This section will describe the fundamental *legal* nature of each of the Landowners' ESA claims and therefore the unavailability of the extraordinary remedy of remand without vacatur. This Court should decline the Service's invitation to enter remand without vacatur under circumstances which the Eleventh Circuit has not endorsed its application.

### A.     The Landowners' First and Second Claims for Relief pertain to the ultimate legality of the Service's determination that Units 7 and 8 meet the statutory standards for designating critical habitat

Under their First Claim the Landowners allege that the Service's conclusion that the pinesnake "occupied" Units 7 and 8—based on outdated and isolated sightings combined with the mere presence of "suitable forested habitat"—is contrary to the ESA's standards for designating "occupied" critical habitat set forth at 16 U.S.C. §§ 1532(5)(A)(i) and 1533(b)(2). *See* ECF No. 8, ¶¶ 115–121. They argue that the designation of Units 7 and 8 as occupied must *fail as a matter of law*. Pl. Op. Br. 15–19; Pl. Reply Br. 8–15. They contend that the Service's reliance on isolated sightings and mere habitat suitability violates the plain language of the ESA by treating the word "occupied" to mean "likely to be occupied" and short circuiting the statutory distinction between "occupied" and "unoccupied" critical habitat. *See* ECF No. 8, ¶¶ 115–121; Pl. Op. Br. 15–19; Pl. Reply Br. 8–15. Under their Second Claim—stated in the alternative to their First Claim—the

Landowners allege that by failing to determine that Units 7 and 8 "are essential for the conservation of the species" the Service violated the ESA's requirements for designating "unoccupied" critical habitat set forth at 16 U.S.C. §§ 1532(5)(A)(ii) and 1533(b)(2). ECF No. 8, ¶¶ 122–128.

As such, the Landowners' First and Second Claims pertain to the ultimate legality of the Service's determination that Units 7 and 8 meet the statutory requirements for critical habitat—be it occupied or unoccupied. Other courts to have addressed similar claims have agreed that a failure to follow the ESA's requirements for designating "occupied" or "unoccupied" critical habitat constitutes *legal* error. For example, in a 2018 decision, then-Judge Ketanji Brown Jackson vacated the designation of critical habitat for the Riverside fairy shrimp, after concluding that it "suffer[ed] from *substantive defects* stemming from the FWS's *failure to delineate the area that the species occupies properly*." *See Otay Mesa Prop., L.P. v. United States Dep't of the Interior*, 344 F. Supp. 3d 355, 379 (D.D.C. 2018) (*Otay Mesa II*) (emphases added). The decision in *New Mexico Farm and Livestock Bureau* is similarly instructive. *See N.M. Farm & Livestock Bureau v. U.S. Dep't of Interior*, 952 F.3d 1216, 1226–27, 1230–31 (10th Cir. 2020). In that case, the Tenth Circuit concluded that the Service had erred by relying upon the purportedly "elusive" nature of the jaguar to designate "occupied" critical habitat on the basis of isolated sightings and habitat suitability, and in the alternative had failed to follow the requirements for designating an unoccupied area. *See id*. In addressing the remedy on remand, the District of New Mexico expressly characterized the matter as involving a "fundamental flaw" and a "substantive question," before granting vacatur. *N.M. Farm & Livestock Bureau*, 2021 WL 275535, at *8.

The Service's argument that the Landowners' First Claim is merely a question of inadequate explanation is also contradicted by its own prior filings, which explicitly conceive of it as raising questions of legality. *See* Serv. Op. Br. 12 (arguing for deference on the grounds the

First Claim implicates "the Service's legal interpretation of the meaning of the word 'occupied'").

### B.     The Landowners' Third and Fourth Claims for Relief pertain to the Service's failure to comply with the ESA's "categorical requirement" that it consider economic impacts

Under their Third Claim the Landowners allege that the Service's reliance on the "baseline" method rendered the Final Rule's economic analysis "virtually meaningless," in violation of 16 U.S.C. § 1533(b)(2). *See* ECF No. 8, ¶¶ 129–138. *See also* Pl. Op. Br. 19–24; Pl. Reply 18–24. Under their Fourth Claim, the Landowners allege that the Service failed to properly consider numerous incremental economic costs, in violation of 16 U.S.C. § 1533(b)(2). *See* ECF No. 8, ¶¶ 139–149. *See also* Pl. Op. Br. 24–26; Pl. Reply 24–26.

These claims assert that the Service failed to comply with the ESA's "categorical requirement," *Weyerhaeuser*, 139 S. Ct. at 371, that it consider the economic impacts of designating critical habitat. As another court explained in vacating a prior designation: "Consideration of economic impacts [under the ESA] is mandatory, not discretionary" and reliance upon a defective economic analysis therefore "constitute[s] serious substantive error . . . . " *Bldg. Indus. Legal Def. Found. v. Norton*, 231 F. Supp. 2d 100, 105 (D.D.C. 2002). *See also Nat'l Ass'n of Home Builders v. Norton*, No. 00-CV-903, 2001 WL 1876349, at *3 (D. Ariz. Sept. 21, 2001) (granting vacatur and determining that the Service's use of an improper methodology when considering economic impacts constitutes "failure to follow the mandates of the statute [and] calls the very substance of the critical habitat designation into question.").

The Landowners therefore assert under their First, Second, Third, and Fourth Claims that the Service committed legal error by failing to comply with the ESA's requirements. *See* ECF No. 8. In the present case—and unlike in *Black Warrior Riverkeeper*—the administrative record is complete and there is no "math error" error preventing a determination of the merits of the

Landowners' claims. The Service's failure to adhere to the ESA's legal requirements vitiates the lawfulness of the Final Rule and cannot be "inconsequential." *See Black Warrior Riverkeeper*, 781 F.3d at 1290. This Court should decline the Service's invitation to enter remand without vacatur under circumstances which the Eleventh Circuit has not endorsed its application. *See id.*[4]

### III. Even Were Remand Without Vacatur Available for the Landowners' ESA Claims, the Service Has Failed to Meet Its Burden to Demonstrate That Remand Without Vacatur is Appropriate Under *Allied-Signal*

If this Court is inclined to entertain the Service's request for the extraordinary remedy of remand without vacatur, it should decline to grant it. The Service has failed to meet its burden to demonstrate that departure from the default remedy is warranted under either *Allied-Signal* factor.

#### A.   The Landowners contend that the Final Rule contains serious deficiencies

Under the first prong of the *Allied-Signal* test, a reviewing court will consider "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)[.]" *Black Warrior Riverkeeper*, 781 F.3d at 1290–91. As discussed, the Landowners contend that the Service committed serious legal error in promulgating the Final Rule contrary to the ESA's requirements. *See supra* 9–12. As such, were this Court to rule in the Landowners' favor, it would be agreeing with them as to the serious nature of these legal defects and declaring that the Service acted unlawfully. *See* ECF No. 8 at 32–34 (requesting a declaration the Service violated the ESA in designating Units 7 and 8); ECF No. 47-1 (same). Any such decision would

---

[4] The Landowners' Fifth Claim, *see* ECF No. 8, ¶¶ 150–157, on the other hand, asserts that the Service abused its discretion by failing to support its exclusion analysis with an adequate explanation that weighed the costs and benefits of excluding Units 7 and 8. *See* Pl. Op. Br. 26–28; Pl. Reply Br. 26–28. As such, should this Court find for the Landowners only on their Fifth Claim, it may consider whether remand without vacatur is appropriate under the *Allied-Signal* factors. *See Black Warrior Riverkeeper*, 781 F.3d at 1290. However, as discussed below, the Service has failed to meet its burden to demonstrate that the equities favor departure from the default remedy on any of the Landowners' claims. *See infra* 13–21.

create unassailable "doubt" that the Service "chose correctly" in designating Units 7 and 8. *Black Warrior Riverkeeper*, 781 F.3d at 1290–91. Indeed, the overwhelming consensus of courts outside this circuit which have applied the *Allied-Signal* factors to similar claims for violation of the ESA, has been to find that vacatur is warranted. In every case the Landowners could find addressing failures by the Service to follow the statutory requirements for designating "occupied" or "unoccupied" critical habitat, the reviewing court granted vacatur.[5] And vacatur has been similarly favored by courts addressing shortfalls in the Service's economic analysis.[6]

The Service does not acknowledge this overwhelming consensus among the courts and instead argues that the first *Allied-Signal* prong favors remand without vacatur because, in its view,

---

[5] *See Otay Mesa I*, 646 F.3d at 916–17 (then-Judge Kavanaugh concluding that reliance on a single sighting was inadequate to support "occupation" and directing the district court to vacate); *Otay Mesa II*, 344 F. Supp. 3d at 379 (then-Judge Jackson vacating critical habitat designation in light of the Service's "failure to delineate the area that the species occupies properly."); *Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 344 F.Supp.2d 108, 119–26, 137 (D.D.C. 2004) (determining that the Service had failed to follow the requirements for designating "occupied" or alternatively "unoccupied" critical habitat, and vacating several units); *N.M. Farm & Livestock Bureau*, 2021 WL 275535, at *8 (vacating designation after the Tenth Circuit concluded that the Service had erred by relying upon the purportedly "elusive" nature of the jaguar to designate "occupied" critical habitat); Memorandum Opinion, *Neb. Habitat Conservation Coal. v. U.S. Fish & Wildlife Serv.*, No. 4:03-cv-03059 (D. Neb. October 13, 2005), ECF No. 53 at 11, 21 (Exh. A to Third Yates Decl.) (vacating Nebraska critical habitat units after determining that the Service had erred by designating an area the species did not "consistent[ly] use" as "occupied").

[6] *See N.M. Cattle Growers Ass'n*, 248 F.3d at 1285 (vacating critical habitat designation after determining that the Service had erred by relying upon the "baseline" approach); *Cape Hatteras Access Pres. All.*, 344 F. Supp. 2d at 132–33, 137 (vacating several units of critical habitat after finding—among other things—that the Service's economic analysis was defective); *Bldg. Indus. Legal Def. Found.*, 231 F. Supp. 2d at 105 (vacating critical habitat designations containing defective economic analyses); *Nat'l Ass'n of Home Builders*, 2001 WL 1876349, at *3 (vacating critical habitat designation after determining that use of the baseline methodology was improper); Memorandum Opinion, *Neb. Habitat Conservation Coal.*, No. 4:03-cv-03059, ECF No. 53 at 16–21 (Exh. A. to Third Yates Decl.) (vacating Nebraska critical habitat units after determining that the Service's economic analysis contained several defects).

"there is a serious possibility that the Service would redesignate" Units 7 and 8 on remand. Serv. Remedy Br. 14. The Service speculates that even were the Landowners to prevail on the merits, it could nevertheless redesignate Units 7 and 8 by relying on the same isolated and outdated sightings and mere "habitat suitability." *Id.* Alternatively, the Service speculates that it could "designate Units 7 or 8 as unoccupied" upon finding each unit is "essential" for the species' conservation. *Id.* This speculation is insufficient for the Service to meet its burden, for three reasons.

**First**, were this Court to agree with the Landowners on the merits of their First Claim, it would be agreeing that the Service's reliance on outdated and isolated sightings combined with mere habitat suitability is insufficient *as a matter of law* to determine occupation under the ESA. *See* ECF No. 8, ¶¶ 115–121. It would therefore be untenable—and potentially contemptuous—for the Service to make the exact same determination based on the exact same evidence, on remand.

**Second**, to designate *unoccupied* critical habitat is necessarily an "extraordinary event," *Cape Hatteras Access Pres. All.*, 344 F. Supp. 2d at 125, requiring an "onerous procedure," *Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010). It is far from a forgone conclusion that the Service could make the necessary finding that Units 7 and 8 are "essential," and thus redesignate each as "unoccupied." *See* 16 U.S.C. § 1532(5)(A)(ii)). Indeed, the administrative record before the Court makes the opposite finding. *See* AR000410 ("we determined that there was sufficient area for the conservation of the subspecies within the occupied areas . . ."). This Court should not grant the extraordinary remedy of "remand without vacatur" on the basis of some speculative future record. *See N.M. Farm & Livestock Bureau*, 2021 WL 275535, at *8 (rejecting a similar argument because it is "certainly not a forgone conclusion, that upon remand the Service would re-designate Unit 5 and Unit 6 as unoccupied critical habitat.").

*Third*, there is a substantive difference between occupied and unoccupied critical habitat. *See Ariz. Cattle Growers*, 606 F.3d at 1163 ("The statute thus differentiates between 'occupied' and 'unoccupied' areas, imposing a more onerous procedure on the designation of unoccupied areas . . . ."). Even if the Service's speculation is correct, and it will designate Units 7 and 8 as unoccupied on remand, that is a different decision than the one it already made. The Service designated Units 7 and 8 as occupied critical habitat and expressly determined that the areas were not being designated under the standards for unoccupied habitat. *See* AR000410 (Final Rule). The Service cannot justify remand without vacatur under *Allied-Signal* when it is arguing that it would make a different decision on remand. *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (rejecting request for remand without vacatur where "on remand, a different result may be reached."); *Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1262 (D.C. Cir. 2007) (vacating agency rule where "wholesale revision" may occur on remand).

Given the finding of legal error that a ruling in the Landowners' favor would entail, the first *Allied-Signal* factor counsels strongly against departure from the default remedy. *See Black Warrior Riverkeeper*, 781 F.3d at 1290–91. This conclusion is supported by the overwhelming consensus of the courts to have applied *Allied-Signal* to similar ESA claims.

### B.    The equities favor vacatur of Units 7 and 8

The second prong of the *Allied-Signal* analysis involves "balanc[ing] the equities" by considering "the disruptive consequences of an interim change, that may itself be changed." *Id.* (quoting *Allied-Signal, Inc.*, 988 F.2d at 150–51). In *Black Warrior Riverkeeper* the Eleventh Circuit identified the pertinent equities as including economic injury to the regulated public and any "potential environmental damage" that may occur. *Id.* The Eleventh Circuit rejected the argument that where environmental damage is possible, economic harm is "irrelevant." *Id.*

As such, should this Court reach the second factor of the *Allied-Signal* analysis, it should balance the economic, environmental, and other harms of leaving Units 7 and 8 intact during remand, against the economic, environmental, and other harms of vacating Units 7 and 8. *But see North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008), *on reh'g in part*, 550 F.3d 1176 (D.C. Cir. 2008) (quotations omitted) (observing that the consequences of vacatur are irrelevant if the agency will have to apply different standards on remand). In the present case the significant harms associated with leaving Units 7 and 8 intact, strongly outweigh any minimal harm to the pinesnake's conservation that may occur should Units 7 and 8 be vacated.

### 1.   The designation of Units 7 and 8 is harmful

As discussed in the Landowners' merits briefing, the designation continues to impose severe economic and other harms on timber businesses operating within Units 7 and 8. *See* Pl. Op. Br. 11–14, 24–26; Pl. Reply. Br. 2–8, 24–26. The designation has caused—and continues to cause—harm in at least four significant ways.

***First***, the designation of Units 7 and 8 has reduced the market value of lands owned by the Landowners and their members. Skipper Decl. ¶¶ 13–16; Jones Decl. ¶¶ 19–22; Goodloe Decl. ¶¶ 11–14. [7] The administrative record also demonstrates the likelihood that private property located within Units 7 and 8 has decreased in value, due to negative public perceptions. *See* AR000044 (Land Values Memorandum). These negative effects to land values are likely to "be more significant and longer lasting" in "areas with large amounts of alternative land suitable for

---

[7] The Service argues that the effected parcels are "entirely unidentified." Serv. Remedy Br. 12. Not true. Gray Skipper testifies that his family owns an 11,489-acre tract of land located entirely within Unit 7. Skipper Decl. ¶ 12. John Goodloe testifies that his family owns a 270-acre tract located within Unit 8. Goodloe Decl. ¶ 8. As the owners and managers of these lands, Mr. Skipper and Mr. Goodloe are obviously competent to testify as to their existence and geographic location.

forestry and other agricultural uses," such as Clarke County, Alabama. AR000046 (Land Values Memorandum) *accord* Skipper Decl. ¶ 16; Jones Decl. ¶ 22; Goodloe Decl. ¶ 13.

*Second*, the designation has imposed significant regulatory costs on the Landowners' timber businesses. For example, as a result of the presumption of occupation created by the designation, the Skippers have had to modify their land management activities to avoid habitat modification within the designated areas. Skipper Decl. ¶¶ 18–21. This has resulted in the loss of present and future revenues, and additional expenditures of time and money. *Id*. Similarly, the designation has negatively affected Phalyn's day-to-day business decisions and resulted in at least one failed deal with a third-party operator to harvest timber. Goodloe Decl. ¶ 16. Even prior to the designation, the Landowners submitted extensive comments identifying numerous concrete examples of the significant economic costs that the designation would impose.[8]

*Third*, the designation will continue to affect the highest and best use of private lands located within Units 7 and 8 by subjecting any project requiring a federal permit or federal funding, to additional scrutiny. *See* 16 U.S.C. § 1536(a)(2). *See also* Skipper Decl. ¶ 17; Jones ¶ 18. Indeed, the Service identifies that nearly 200 consultations have been initiated since the designation was finalized in 2020. Phillips Decl. ¶¶ 7–8.

*Finally*, the harms imposed by the designation are not limited to economic hardship. The designation also makes it less likely that private landowners will manage their land to maintain longleaf pine habitat and participate in voluntary conservation programs, significantly reducing the conservation value of private lands within Units 7 and 8. *See* Jones Decl. 24 ("the Service discourages conservation activities and greatly diminishes this long-term value of this property.").

---

[8] *See* AR 001065–66, AR001067–71 (Thomas Gray Skipper); AR001072–95 (Thomas Gray Skipper Trust of 1989); AR000700–06 (Forest Landowners' Association).

*See also* AR000704–05 (comments of FLA); AR001404 (Lueck and Michael 2003); AR003833 (Ward, et al., 2018). Indeed, due to uncertainties created by the designation, the Skippers have ended a sixty-year conservation partnership with the state of Alabama. Skipper Decl. ¶¶ 22–24.

In the absence of an order vacating Units 7 and 8, these harms will continue indefinitely. *See* Serv. Remedy Br. 20–21 (contending that the Service should be afforded unlimited time for remand); Phillips Decl. ¶ 9 (stating that the Service is "unsure when" it would complete remand).

### 2.   Vacatur of Units 7 and 8 would not harm the pinesnake's conservation

On the other side of the equation, the record reflects the Service's apparent belief that designating critical habitat for the pinesnake offers limited conservation benefit. *See* AR 00041–42 (Screening Analysis) (noting inability to assess conservation or other benefits resulting from the designation). Indeed, the only benefits identified in the record are vague, qualitative benefits such as improved "public awareness of the presence of black pinesnake and the importance of habitat protection." AR000415 (Final Rule). The Service's hyperbolic claim that vacatur of Units 7 and 8 could be "devastating for the species," Serv. Remedy Br. 9–13, is therefore exaggerated.

Indeed, given the low probability that the pinesnake is even present in Units 7 and 8, it is unlikely that vacatur will have any effect on the species' conservation whatsoever. Other courts have determined that vacatur of a designation will be minimally disruptive to a species' conservation where there exists scant evidence of its presence within the designated area. For example, in *New Mexico Farm and Livestock Bureau*, the District of New Mexico determined that any harm resulting from vacatur of Units 5 and 6 would be "minimal at best" where there had been "only three sightings of jaguar since 1995." *N.M. Farm & Livestock Bureau*, 2021 WL 275535, at *7. *Cf. Otay Mesa I*, 646 F.3d at 916–19 (vacating critical habitat designation where only four San Diego fairy shrimp observed in critical habitat four years after listing). Notwithstanding an

extensive survey of Units 7 and 8 conducted in 2008-09, AR001968 (Barbour 2009), there has only been one pinesnake sighting in Unit 7 since 1995, AR000413, and there have been *zero* sightings in Unit 8 since 1997, AR001252 (Duran 1998a).

Moreover, even were a pinesnake to slither onto Unit 7 or 8 at some point in the future, that individual and its habitat would be protected from harm by the Section 4(d) rule currently in effect. *See* 50 C.F.R. § 17.42. Other courts have observed that where a species retains the protections of listing, the likelihood of harm resulting from vacatur of a critical habitat designation, is minimal. *See Otay Mesa II*, 344 F. Supp. at 379 ("The listing alone provides substantial protection for the species, and vacatur of the erroneous critical habitat rule 'will in no way disturb the considerable protections, both civil and criminal, afforded to the [species] as a listed species under the ESA.'" (quoting *Bldg. Indus. Legal Def. Found.*, 231 F. Supp. 2d at 104–05)); *Bldg. Indus. Legal Def. Found.*, 231 F. Supp. 2d at 104–05 (same).

This Court should not credit the Service's argument that vacatur would "waste limited agency resources." *See* Serv. Remedy Br. 11–12. That the Service will need to expend resources to correct its illegal designation is not a compelling reason to deny relief to the Landowners. If resources are of significant concern to the Service, then it could have complied with the ESA and APA in the first instance. The Landowners have already been subjected to an arbitrary and illegal rule for over two years. To require them to indefinitely bear the consequences of the Service's illegal decision to save the Service's resources, would offend fundamental notions of equity.

As such, the significant harm resulting from indefinite maintenance of Units 7 and 8, significantly outweighs any minimal harm to the pinesnake's conservation that may result from vacatur of Units 7 and 8. The Service has failed to meet its burden to demonstrate otherwise.

**IV.   Vacatur of Units 7 and 8 is the Proper Remedy for the Plaintiffs' RFA Claim**

If this Court were to rule for the Landowners only on their Sixth Claim for Relief, vacatur would still be the appropriate remedy, for three reasons.

*First*, under their Sixth Claim, the Landowners allege that by certifying that the designation would not significantly impact small entities, the Service erred as a matter of law by categorically concluding that critical habitat designations are never subject to the RFA. ECF No. 8, ¶¶ 158–64. The fundamental nature of this categorical error counsels in favor of vacatur. *See Nat'l Ski Areas Ass'n*, 910 F. Supp. 2d at 1287 ("[t]he fact that substantial evidence shows that Defendants also violated the RFA . . . only serves to reinforce the result against Defendants on vacatur.").

*Second*, in considering the "public interest" in its RFA remedy analysis, this Court must give prominent consideration to the effects of the designation on small entities and not merely defer to the government's characterization of the public interest. *See Nw. Mining Ass'n v. Babbitt*, 5 F. Supp. 2d 9, 16 (D.D.C. 1998) (noting at the remedy stage that "effects on small businesses . . . are precisely what the procedural safeguards of the RFA and the APA are set in place to address" and rejecting the government's arguments that environmental considerations should dictate the public interest analysis over and above impacts to small entities). As demonstrated above, the harms associated with leaving the designation of Units 7 and 8 in place indefinitely, significantly outweigh any minimal harm to the pinesnake's conservation. *See supra* 16–20.

*Third*, this Court should decline the Service's prior invitation to apply the "harmless error" rule. Serv. Op. Br. 30 n. 17. Other courts have determined that where—as in the present case—an agency fails to perform a regulatory flexibility analysis, it cannot avail itself of the "harmless error" rule at the remedy stage. *See U.S. Telecom Ass'n v. Fed. Commc'ns Comm'n*, 400 F.3d 29, 42

(D.C. Cir. 2005) ("it is impossible to determine whether a final regulatory flexibility analysis . . . would have affected the final order when it was never prepared in the first place.").

## V.    This Court Must Vacate Units 7 and 8 In Their Entirety

If this Court agrees with the Landowners, then it must vacate Units 7 and 8 in their entirety. Under the APA, the presumptive remedy is total vacatur. *Health Freedom Def. Fund*, 2022 WL 1134138, at *22 (collecting cases). It is a fundamental administrative law principle that where a rule is "one, integral action," all of its components "must stand or fall together." *North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008).

Nevertheless, a reviewing court "may partially set aside a regulation if the invalid portion is severable." *High Country Conservation Advocates v. U.S. Forest Serv.*, 951 F.3d 1217, 1228– 29 (10th Cir. 2020) (quoting *Ariz. Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1122 (10th Cir. 2009)). The test for severability is whether "the severed parts operate entirely independently of one another, and the circumstances indicate the agency would have adopted the regulation even without the faulty provision." *Id.* (quoting *Ariz. Pub. Serv. Co.*, 562 F.3d at 1122). Severance "is improper if there is 'substantial doubt' that the agency would have adopted the severed portion on its own." *Davis Cnty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997) (quoting *North Carolina v. Fed. Energy Regulatory Comm'n*, 730 F.2d 790, 795–96 (D.C. Cir. 1984)). Here each unit of critical habitat operates independently. *See* AR000413 (Final Rule). As such, Units 7 and 8 are severable from Units 1-6 and this Court may enter an order of partial vacatur limited to Units 7 and 8. The Service, however, requests that this Court attempt further severance of the Final Rule by limiting vacatur to the parcels of real property owned by the Skippers and Phalyn. *See* Serv. Remedy Br. 17–18. This Court must decline this request, for three reasons.

*First*, the Service does not attempt to justify partial vacatur of the Skippers' and Phalyn's property under the appropriate test. The Service makes no attempt to explain how "the severed parts"—that is the remainder of Units 7 and 8—"operate entirely independently of" the designation on the Landowners' real property. *See High Country Conservation Advocates.*, 951 F.3d at 1228–29 (quoting *Ariz. Pub. Serv. Co.*, 562 F.3d at 1122). The Service similarly fails to argue that it would have designated the remainder of Units 7 and 8 sans the Landowners' real property. *See Davis Cnty. Solid Waste Mgmt.*, 108 F.3d at 1459. Indeed, Units 7 and 8 were each justified by the Service as a whole and based on the same evidence, without any reference whatsoever to ownership boundaries within either unit. *See* AR000413 (Final Rule).

*Second*, there is no merit to the Service's contention that complete vacatur of Units 7 and 8 would be constitutionally suspect. Serv. Remedy Br. 17. The Service mischaracterizes vacatur as "injunctive relief," Serv. Br. 9, and cites a number of authorities on the propriety of nationwide injunctions, *id.* 17–19. Vacatur is not "injunctive relief." *See Ctrs. for Medicare & Medicaid Servs.*, 674 F.3d at 1245 (distinguishing APA vacatur from injunctive relief); *Health Freedom Def. Fund*, 2022 WL 1134138, at *21 (collecting cases for the proposition that vacatur is not an injunction). *See also Monsanto*, 561 U.S. at 165–66. Rather, vacatur it is a distinct form of relief, unambiguously required by the text of the APA. *See* 5 U.S.C. § 706(2). There is no constitutional barrier to this Court entering the default remedy and vacating Units 7 and 8 in their entirety.[9]

*Third*, limiting vacatur to the Skippers' and Phalyn's property would not—as the Service argues—provide full relief to the parties. The injury to FLA's membership is not limited to the

---

[9] There is another reason to disregard the Service's arguments regarding the constitutionality of nationwide injunctive relief: Vacatur of Units 7 and 8 would not be "nationwide." Both units—located in Clarke County—are within the boundaries of this District. AR000413 (Final Rule).

parcels of property owned by the Skippers and Phalyn. FLA member Scotch Land Management, LLC, operates throughout Unit 7, without limitation to the Skippers' tract. *See* Jones Decl. ¶ 17.

## VI.   The Service Cannot Use Its Brief On Remedy to Further Argue the Merits

Finally, the Landowners will address the Service's attempt to use its brief on remedy to present additional argument and extra-record evidence, in support its position on the merits.

The Landowners do not interpret this Court's April 21, 2022, order as granting leave to present additional argument, legal authority, or evidence on the merits. *See* ECF No. 79. That order refers only to the Service's request for "an opportunity to provide supplemental briefing on the relief requested by the Plaintiffs and available remedies." *Id.* Nevertheless, the Service dedicates a substantial portion of its remedy brief to further argue the merits. *See* Serv. Remedy Br. 5–8. The first subsection of the Service's "Argument" section—titled "The Court should find that the Service has not violated the ESA or RFA, and uphold the Designation"—makes no reference to the remedy and instead presents new case authorities and renewed argument as to the merits of the Landowners' claims. *See id.* This Court should reject those new arguments.

This Court should especially reject the new, extra-record evidence presented by the Service in support of its renewed merits arguments. The Service argues in its remedy brief—as it did on summary judgment—that the Landowners' First Claim must fail because in the context of an "extremely elusive" species "the Administrative Record amply supports the Service's determination that Units 7 and 8 are occupied." Serv. Remedy Br. 7.[10] But in renewing this

---

[10] To the extent a response to this renewed argument is necessary or appropriate, the Landowners direct the Court's attention to their prior discussion of *New Mexico Farm and Livestock Bureau*, an analogous case in which the Tenth Circuit explicitly rejected a similar argument that a species' purportedly "elusive" nature excused the Service's speculative reliance on isolated sightings and mere habitat suitability to designate "occupied" critical habitat. *See* Pl. Op. Br. 16–18 (citing *N.M. Farm & Livestock Bureau*, 952 F.3d at 1226–27); Pl. Reply. Br. 16–17 (same).

argument the Service now explicitly supports it with a May 13, 2022, declaration from Service employee Dr. Catherine Phillips. Serv. Remedy Br. 7 (citing Phillips Decl. ¶ 5).

Even if the Service presented this declaration in the original summary judgment briefing, this Court could not consider it. It is fundamental that under the APA standard of review a party may not establish adjudicative facts by relying upon evidence outside the administrative record. *See Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) ("[t]he focal point for judicial review of an administrative agency's action should be the administrative record" (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973))). *See also Wise v. Heddel*, No. 5:09-CV-127 CAR, 2011 WL 1379867, at *1 (M.D. Ga. Apr. 12, 2011) ("Evidence which is not part of administrative record may not be considered . . . ."). Dr. Phillips' May 13, 2022, declaration is not part of the administrative record filed on August 31, 2021. The Service's attempt to bolster its renewed merits arguments by relying upon Dr. Phillips' opinions regarding the pinesnake's purportedly "elusive" nature is not in accordance with the APA's standard of review.

It may be true that Dr. Phillips' declaration—to the extent it discusses the Service's remand process—bears some relevance to the *non-adjudicative* question of remedy. *See*, *e.g.*, Phillips Decl. ¶ 9 (supporting the Service's request for an indefinite remand period by stating that the Service is "unsure when" it would get around to completing remand). However, in considering Dr. Phillips' declaration for that limited purpose, this Court should reject the remainder of the declaration that attempts to support the Service's merits arguments.

## CONCLUSION

Should this Court find for the Landowners on the merits, it should grant their motion for summary judgment, declare that the Service acted unlawfully in designating Units 7 and 8 as critical habitat, and enter the presumptive APA remedy by vacating Units 7 and 8 in their entirety.

DATED: June 3, 2022.

Respectfully submitted,

/s/ Charles T. Yates
CHARLES T. YATES*
Cal. Bar No. 327704
JEFFREY W. McCOY*
Cal. Bar No. 317377
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: JMccoy@pacificlegal.org
Email: CYates@pacificlegal.org

*Pro Hac Vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2022, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

/s/ Charles T. Yates
CHARLES T. YATES*

*Pro Hac Vice*
